IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNA HOAGLAND,             : Case No.:  05cv0099
                                    :
           Plaintiff         :
                                    : Judge Jones
        v                 :
                                    :
AMERIHEALTH ADMINISTRATORS, :
ET AL.,                            :
           Defendants     :

## MEMORANDUM AND ORDER

January 6, 2006

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion for Summary Judgment filed by Defendants AmeriHealth Administrators and Ono Transport Services, Inc., Health and Medical Benefits Plan (doc. 26) on October 2, 2005.  We also have before us a Motion for Summary Judgment filed by Plaintiff Donna Hoagland (doc. 29) filed on October 3, 2005.

For the reasons that follow, Defendants' Motion will be granted and the case closed.

### PROCEDURAL HISTORY:

As we explained in our June 28, 2005 Order, on January 13, 2005, Plaintiff Donna Hoagland ("Plaintiff" or "Hoagland") filed a complaint arising under the

1

provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1001 et seq. in the United States District Court for the Middle District of

Pennsylvania with Erin Group Administrators, Inc. ("Erin"), AmeriHealth

Administrators ("AmeriHealth"), and J.P. Donmoyer, Inc. ("Donmoyer") as named

Defendants.  (See Rec. Doc. 1).

On March 21, 2005, all named Defendants in the complaint, Erin,

AmeriHealth, and Donmoyer filed a Motion to Dismiss the complaint.  (See Rec.

Doc. 8).  The Court's April 4, 2005 Order denied the Motion to Dismiss as moot as

Plaintiff filed an Amended Complaint on March 30, 2005 naming Erin,

AmeriHealth, and Ono Transport Services, Inc. Health and Medical Benefits Plan

as Defendants.  Plaintiff therefore dropped Donmoyer as a Defendant and named

Ono Transport Services, Inc. Health and Medical Benefits Plan in its place.  (See

Rec. Docs. 13-14).

On June 28, 2005, we granted in part and denied in part Defendants' Motion

to Dismiss the Amended Complaint.  (Rec. Doc. 21).  In that Order, we granted

Defendants' Motion to the extent that Count I of the Amended Complaint was

dismissed and Defendant Erin was dismissed from this action.  We denied

Defendants' Motion with respect to Defendant AmeriHealth but noted that either

party reserves the right to raise this issue at a subsequent point in the litigation if it

2

becomes evident that Plaintiff is not pursuing equitable relief under ERISA as against Defendant AmeriHealth.

On October 2 and 3, 2005 respectively, Defendants and Plaintiff filed the instant Motions, which have been fully briefed.  The Motions are therefore ripe for disposition.

**FACTUAL BACKGROUND:**

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party in our analysis of the pending Motions.

Plaintiff seeks to recover medical benefits under an ERISA self-funded health and welfare plan known as the Ono Transport Services, Inc. Health and Medical Benefits Plan ("the Plan").  Ono Transport Services, Inc. is the Plan Administrator.  The Defendant whom we dismissed from this action as per our June 28, 2005 Order, Erin, was the third party administrator for the Plan during the period from January 10, 2004 through January 31, 2004.  AmeriHealth was the third party administrator for the Plan at all relevant times after February 1, 2004.

Both parties agree that Hoagland had a long history of diarrhea and irritable bowel syndrome prior to January 2, 2004.  (Defs.' SMF at ¶ 4; Pl.'s Resp. Defs.' SMF at 1).  On January 2, 2004, Hoagland had an office visit with her primary care

physician, Dr. Michael Wright ("Dr. Wright") with complaints of diarrhea and

blood in her stools.  Dr. Wright diagnosed Plaintiff with diarrhea, likely irritable

bowel syndrome ("IBS"), and ordered a colonoscopy to rule out inflammatory

bowel disease ("IBD").  Dr. Wright's assessment of Hoagland provides, in relevant

part, the following:

> Donna has a problem.  Diarrhea + blood + weight loss = absolute
> indication for colonoscopy to rule out inflammatory bowel disease.
> Most likely this is IBS [irritable bowel syndrome] with hemorrhoids
> causing bleeding but weight loss is concerning!  Will definitely need
> referral for colonoscopy.  She has some insurance issues to sort out
> right now and will get back to us in the next couple of days on this.
> Refer to GI.

Rec. Doc. 28, Ex. B at 15.  As of January 2, 2002, Hoagland did not have any

health insurance coverage.[1]

On January 10, 2004, Plaintiff married Richard Hoagland, who was an

employee of J.P. Donmoyer, Inc., an affiliate of Ono Transport Services, Inc., and

was covered under the Plan.  In accordance with the terms of the Plan, Hoagland

became covered under the Plan effective January 10, 2002 upon her marriage to

Richard Hoagland.  On January 29, 2004, Plaintiff was seen at the Muncy Valley

---

[1] The parties appear to agree that Plaintiff had COBRA coverage through October 31,
2003.  Defendants state that Plaintiff "voluntarily allowed this coverage to lapse and did not
immediately replace it with any other health insurance coverage," whereas Plaintiff indicates that
because she could no longer afford health insurance coverage, she was forced to cancel it.  (Rec.
Doc. 28, Ex. C at 16; Defs.' SMF at ¶ 7; Pl.'s Resp. Defs.' SMF at ¶ 7).

Hospital Emergency Room with complaints of diarrhea, abdominal pain, and

vomiting.  She was admitted to the hospital.  The following day, Plaintiff was

transferred to the Williamsport Hospital and Dr. Wright examined her.  The

"History and Physical Examination" portion of Dr. Wright's medical notes states,

in relevant part, that:

> [Plaintiff] has a lifelong pattern of what sounds like an irritable bowel
> syndrome type of diarrhea where she will eat and then an hour or so
> later, have fecal urgency, which usually would produce watery
> diarrhea.  Of note, however, she has not had any exacerbation that has
> been this severe or lasted this long and has not had any problems with
> weight loss in the past.  Her family history is significant for a maternal
> grandmother who is thought to have ulcerative colitis and a father
> who had some sort of inflammatory bowel process, the specifics of
> which are unknown.  The patient was seen in my office approximately
> a month ago with all of these symptoms.  At that time, it was my
> desire to refer her to GI for a colonscopy.  However, insurance
> reasons did not permit this . . . Last night, the patient had finally
> obtained insurance coverage and presented to the Muncy Valley
> Emergency Room.

Rec. Doc. 32 at 2.9; Rec. Doc. 28, Ex. F at 48.  In addition, Dr. Wright's

"Assessment and Plan" of Hoagland's condition on January 30, 2004, states, in

pertinent part, the following:

> 1.    Likely Crohn's disease.  As mentioned above, the patient was
>       transferred and admitted to the Williamsport Hospital for
>       further workup and treatment.  As there are other (however,
>       unlikely) diagnoses, such as an abscess, which could indirectly
>       precipitate these symptoms, it is certainly wise to check a CT of
>       her abdomen and pelvis.  This would certainly give us other de
>       facto evidence of Crohn's disease based upon the pattern of

> inflammation that is shown.  Last night, she did receive one
> dose of Prednisone.  She has been placed on IV fluids.  We will
> consult Dr. Burns with GI.

Rec. Doc. 32 at 2.11; Rec. Doc. 28, Ex. F at 50.  Subsequently, on January 30,

2004, Hoagland was seen by Dr. John T. Burns ("Dr. Burns"), a gastroenterologist

with Susquehanna Gastroenterology Associates, Ltd.  In his Consultation Report,

Dr. Burns explained that "Following CAT scan could potentially perform

colonoscopy on the patient.  Based on her symptoms, it sounds like she may have

inflammatory bowel disease."  Rec. Doc. 32 at 2.14.

On February 2, 2004, Dr Burns performed a colonoscopy on Plaintiff that

resulted in a diagnosis of Crohn's disease, as well as several biopsies done to

corroborate the diagnosis.[2]  The Colonoscopy Report states the following within

the "Procedure" section, in relevant part:

> The patient was placed in left decubitus position and an endoscope
> was introduced through the rectum and advanced under direct
> visualization until the ileum was reached . . . Diffuse discontinuous
> loss of vascular pattern, deep ulceration and friability with
> spontaneous bleeding were noted in the transverse colon, splenic
> flexure, descending colon, sigmoid colon and rectum.  These findings

---

[2] Crohn's disease or Crohn's Colitis is one of the two main disease categories commonly referred to as IBD.  In an article which both parties have agreed is authoritative, the Crohn's & Colitis Foundation of American describes Crohn's disease as "a chronic (ongoing disorder that causes inflammation of the digestive or gastrointestinal (GI) tract . . . Crohn's and a related disease, ulcerative colitis, are the two main disease categories that belong to a larger group of illnesses called inflammatory bowel disease (IBD)."  (Rec. Doc. 28 at Ex. E at 22-23; see also Rec. Doc. 28 at 36).

> are compatible with Crohn's Colitis.  The ulcers are deep and
> serpigenous.  There are some scattered areas of more normal mucosa,
> but the disease affects everything from the hepatic flexure, distall.

Rec. Doc. 28, Ex. H at 54; Rec. Doc. 32 at 2.38.

The "Impression" section of the Colonoscopy Report indicates "Crohn's

Colitis from hepatic flexure distally to rectum."  Id.  Plaintiff was treated as an

inpatient at the Williamsport Hospital until February 7, 2004, when she was

discharged to her home.  Since being discharged, Plaintiff asserts that Dr. Burns

has been treating her Crohn's disease with Prednisone and subsequently with

intravenous infusions of Remicade.  (Pl.'s SMF at ¶ 14).

Plaintiff submitted bills for the medical treatment she received on January

29, 2004 and thereafter related to her Crohn's disease to the Plan for payment.

Both Erin and AmeriHealth, the third party administrators for the Plan during the

relevant time periods, denied Hoagland's claim for benefits based upon an

exclusion in the Plan for treatment of a pre-existing condition within a six month

period preceding the claimant's enrollment in the Plan.  Specifically, they based

their decision on Dr. Wright's advice and recommendation to Hoagland on January

2, 2004 to have a colonoscopy performed to determine if she was suffering from

IBD.

Hoagland submitted a written appeal to Erin, which was denied based upon

the Pre-existing Condition Exclusion clause in the Plan.  Plaintiff also appealed

AmeriHealth's denial of her claim for medical expense benefits under the Plan;

however, such appeal was denied based upon the above-referenced exclusion.

Plaintiff submitted a second level appeal to AmeriHealth, which was likewise

denied based upon the Pre-existing Condition Exclusion.

This Court has jurisdiction over this action pursuant to 29 U.S.C. §

1132(e)(1) and 28 U.S.C. § 1331 because this is an action to recover benefits under

a medical expense benefit plan covered by ERISA and arises under the laws of the

United States.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

FED .R. CIV. P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335,

340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could

draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir.

1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.

9

1992), <u>cert. denied</u>, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." <u>Id.</u> at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

## DISCUSSION:

### A.   Applicable Standard of Review

Under ERISA, a court reviewing an administrator's decision to deny benefits is by default reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine the employee's eligibility or construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Stratton v. E.I. DuPont De Nemours & Co.</u>, 363 F.3d 250, 253 (3d Cir. 2004). If a plan provides discretionary authority to the administrator or fiduciary, then a reviewing court applies a form of arbitrary and capricious review. <u>Firestone Tire & Rubber Co.</u>, 489 U.S. at 111-12, 115; <u>see</u> <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997). Discretionary authority can be provided for by

10

express or implied language in the benefit plan.  Luby v. Teamsters Health, Welfare, & Pension Trust, 944 F.2d 1176, 1180 (3d Cir. 1991).  Whether arbitrary and capricious review is heightened in any way depends on the presence of potentially conflicted ERISA fiduciaries and is determined on a sliding scale that we will discuss in further detail below.  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000).

The scope of discovery depends upon the standard of review.  In the Third Circuit, "a district court exercising de novo review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's Administrator."  Luby, 944 F.2d at 1184-85.  In sharp contrast, the record available to a court conducting an arbitrary and capricious review is the record made before the plan administrator, which cannot be supplemented during litigation.  See Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004)(citing Mitchell, 113 F.3d at 440).  Nevertheless, when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record.  Id.

To determine the proper standard of review, we must begin with the language of the Plan.  In this case, as Defendants submit, the Plan states that the

Plan Administrator is provided "maximum legal discretion in interpreting the Plan .

. . any interpretation to be reviewed under the arbitrary and capricious standard"

and "maximum legal discretion in deciding all questions concerning the Plan

including . . . the entitlement of any person to any benefit under the Plan."  (Rec.

Doc. 28, Ex. A at 9).  Moreover, the Plan provides the Plan Administrator with the

power to "appoint . . . third party administration service providers . . . as may be

required to assist in administering the Plan" and to "delegate its responsibility

under the Plan and to designate other persons to carry out any of its responsibilities

under the Plan."  Id.   Accordingly, the Plan at issue supplies the Plan

Administrator with discretionary authority to interpret the Plan, "maximum legal

discretion" in deciding any and all matters arising from the Plan, and the authority

to delegate its duties.  Therefore, we will review the decision regarding Plaintiff's

claim for benefits under the arbitrary and capricious standard of review on the

basis of the administrative record before AmeriHealth at the time of the decision to

deny Plaintiff's claim.[3]  See Kosiba, 384 F.3d at 67 n.5 (citing Mitchell, 113 F.3d

at 440).

As our colleague the Honorable James F. McClure, Jr. recently explained,

---

[3] We note that both parties agree that the arbitrary and capricious standard of review is
applicable to this case.

the Third Circuit follows a sliding scale approach to applying an arbitrary and

capricious review and the sliding scale allows for the court to intensify its scrutiny

of the insurer's decision to match the degree of conflict present in the insurer's

decision making process.  Bowman v. Hartford Life and Accident Ins. Co., 4:04-

CV-2191 (M.D. Pa. September 27, 2005); see also Pinto, 214 F.3d at 392.  As the

Third Circuit Court of Appeals recently explained in Kosiba, Pinto offered a

nonexclusive list of factors to consider in assessing whether a structural conflict of

interest warranting heightened review exists.  The factors a court considers in

determining the degree of scrutiny to afford the administrator in the determination

to terminate benefits include: "(1) the sophistication of the parties; (2) the

information accessible to the parties; (3) the exact financial arrangement between

the insurer and the company; and (4) the status of the fiduciary, as the company's

financial or structural deterioration might negatively impact the 'presumed desire

to maintain employee satisfaction.'"  Stratton, 363 F.3d at 254 (citing Pinto, 214

F.3d at 392).  In addition, the Third Circuit stated in Pinto that it "expect[s] district

courts to consider the nature and degree of apparent conflicts with a view to

shaping their arbitrary and capricious review of the benefits determinations of

discretionary decisionmakers."  Pinto, 214 F.3d at 393.

In the case sub judice, there is no conflict of interest warranting heightened

arbitrary and capricious review.  Defendants accurately submit that the Plan as an entity did not take any part in the decision to deny Plaintiff's claim for benefits, but delegated this responsibility to Erin and/or AmeriHealth.  There is no conflict in AmeriHealth's decision making process in handling Plaintiff's appeal that would warrant the application of the Pinto sliding scale to the instant case.  Moreover, this case is distinguishable from a case where an insurance company both decides the claim and is obligated to pay the benefits as here the Plan is required to pay benefits, and AmeriHealth has no financial stake in the claims decision.  Therefore, the Court will not apply a heightened arbitrary and capricious standard of review to the decision to deny Plaintiff's claim for benefits, which was subsequently affirmed on appeal.

Accordingly, as Judge McClure explained in Bowman, our inquiry in conducting an arbitrary and capricious review of the insurer's decision is not whether AmeriHealth made the same decision that we would have made as a district court cannot substitute its own judgment for that of the Plan administrator when conducting an arbitrary and capricious review.  Bowman, 4:04-CV-2191, at 21; see also Abnathya v. Hoffmann-La Rouche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).  A district court conducting an unadulterated arbitrary and capricious review may overturn a decision of a Plan Administrator only if it is "without reason,

unsupported by substantial evidence or erroneous as a matter of law." McLeod v.

Hartford Life & Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004) (quotation

marks and citations omitted).

**B.**    **Whether the Decision to Deny Disability Benefits was Arbitrary and Capricious**

In their Motion for Summary Judgment, Defendants argue that this case

presents a classic situation for the application of the Plan's Pre-existing Condition

Exclusion.  Defendants assert that Plaintiff was advised to have certain tests

performed to determine if she was suffering from an IBD like Crohn's disease;

however, she failed to follow her physician's advice based on her lack of insurance

and waited until she was covered by insurance to have the test performed.  (Defs.'

Br. Supp. Mot. Summ. J. at 10).  "Pre-existing condition exclusions are designed to

protect an insurer or self-funded plan from people electing not to purchase

insurance until they suspect or know they have a medical problem, and then shift a

known loss to the insurer/plan.  Such a situation is legally the same as the insured

who has gone without property insurance for twenty years, and then attempts to

purchase a fire insurance policy as his house is burning down." Id.  Defendants

therefore maintain that Plaintiff cannot demonstrate that the decision to deny her

benefits was arbitrary and capricious.

In her Motion for Summary Judgment, Plaintiff focuses upon one argument,

15

specifically that the decision to deny her disability benefits was arbitrary and

capricious because she was not treated for Crohn's disease during the six month

period before she became member of the Plan.  Rather, she was diagnosed with

IBS, which is completely different from Crohn's disease.  (Pl.'s Br. Supp. Mot.

Summ. J. at 2).  "Accordingly, there was a 'misdiagnosis,' which makes the pre-

existing condition exclusion inapplicable to Plaintiff's case."  Id.

It is important to initially note that the Pre-Existing Condition Exclusion in

the Plan provides, in relevant part, as follows:

> As explained below, any Pre-existing Conditions that You or Your
> covered Dependents may have that cannot be reduced by Creditable
> Coverage can be excluded from coverage for a period of time.

> A Pre-existing Condition is any medical condition, regardless of the
> cause of the condition, for which medical advice, diagnosis, care or
> treatment was recommended or received by a licensed health care
> provider or practitioner in the 6-month period immediately preceding
> a person's Enrollment Date for 'Medical Benefits.'  Pregnancy and
> Genetic Information are not considered Pre-existing Conditions.

> No benefits will be paid for items or services furnished to a person in
> connection with a Pre-existing Condition until the end of a period fo
> 365 (546 days if the enrollment was not a 'timely,' 'special,' or 'open'
> enrollment) from his or her Enrollment Date.

Rec. Doc. 28, Ex. A at 8.

After a careful review of the record and applicable caselaw, we find that

AmeriHealth's decision to deny Plaintiff's claim for benefits was not arbitrary and

16

capricious, for the reasons that follow.

The parties agree that Plaintiff has a long history of IBS.  However, as Defendants accurately point out, Plaintiff's symptoms on January 2, 2004, including bleeding and weight loss, were such that Dr. Wright was concerned enough to recommend and strongly advise Plaintiff to have a colonoscopy performed to rule out an IBD.  In fact, we find it notable that Dr. Wright indicated in his medical notes for Plaintiff's January 2, 2004 office visit that "Diarrhea + blood + weight loss = *absolute indication for colonoscopy* to rule out inflammatory bowel disease. . . *Will definitely need referral for colonoscopy* . . . She has some insurance issues to sort out right now and *will get back to us in the next couple of days on this*."  (Rec. Doc. 32 at 2.25).  In addition, Plaintiff has admitted that on January 2, 2004, "Dr. Wright informed [her] that he wanted her to have a colonoscopy performed to rule out Crohn's disease and several other conditions." (Defs.' SMF at ¶ 8; Pl.'s Resp. Defs.' SMF at ¶ 8).  Plaintiff likewise admitted that she did not contact Dr. Wright within a couple of days as she previously indicated, but "did not get back to Dr. Wright within a couple of days of January 2, 2004, with respect to his recommendation that she have a colonoscopy performed to rule out inflammatory bowel disease and/or Crohn's disease." (Defs.' SMF at ¶¶ 6, 9; Pl.'s Resp. Defs.' SMF at ¶¶ 6, 9).  Finally, Plaintiff admitted that on January 30,

2004, Dr. Wright stated in his medical report that: "The patient was seen in my office approximately a month ago with all of these symptoms.  At that time, it was my desire to refer her to GI for a colonoscopy.  However, insurance reasons did not permit this."  (Defs.' SMF at ¶ 12; Pl.'s Resp. Defs.' SMF at ¶ 12).

Defendants accurately submit that as it turned out, Plaintiff was suffering from the condition for which Dr. Wright recommended that she be tested on January 2, 2004, an IBD.  Plaintiff's failure to follow Dr. Wright's advice and strong recommendation that she receive a colonoscopy "to rule out inflammatory bowel disease" based upon a lack of health insurance, does not provide a legal justification for ignoring the Plan's Pre-existing Condition Exclusion.  The plain language of the Plan's Pre-existing Condition Exclusion covers "any medical condition . . . for which medical advice, diagnosis, care or treatment was *recommended* or received by a licensed health care provider or practitioner."  (Rec. Doc. 28, Ex. A at 8).  This clause covers those instances where medical advice is recommended, and is not limited to those instances in which medical treatment is actually provided or received.  We find that Dr. Wright recommended prior to January 10, 2004 that Plaintiff receive medical care and testing for the condition that was ultimately diagnosed on or about February 2, 2004.  Accordingly, AmeriHealth's decision to deny Plaintiff's claim for benefits pursuant to the Plan's

Pre-Existing Condition Exclusion was not arbitrary and capricious.

We do note that Plaintiff's reliance upon McLeod v. Hartford Life and Accident Ins., 372 F.3d 618 (3d Cir. 2004), and Lawson v. Fortis Ins. Co., 301 F.3d 159 (3d Cir. 2002), is misplaced as such cases are distinguishable from the case sub judice.  In McLeod, Shirley McLeod had been treated for a number of conditions prior to the effective date of coverage for long term disability benefits. McLeod was eventually diagnosed with multiple sclerosis.  Prior to the effective date of coverage, none of McLeod's treating physicians had ordered any tests for multiple sclerosis, nor had any suspicions that she might be suffering from the disease.  Accordingly, McLeod had been receiving medical care for various ailments for two years, but she was neither diagnosed with nor treated specifically for multiple sclerosis until after her benefits plan became effective.  McLeod, 372 F.3d at 620.  As Defendants assert, it was only with hindsight after she had been diagnosed with multiple sclerosis that McLeod's physicians were able to make any connection between her prior symptoms and multiple sclerosis.  Id. at 621-22.

After conducting an extensive analysis of the issues surrounding the application of a pre-existing condition exclusion in circumstances where a definitive diagnosis has not been made prior to the effective date of coverage, the Third Circuit Court of Appeals explained in McLeod that:

19

[W]e hold that the phrase 'symptoms . . . for which you received Medical Care' in the Hartford policy necessarily connotes an intent to treat or uncover the particular ailment which causes that symptom (even absent a timely diagnosis), rather than some nebulous or unspecified medical problem.  To hold otherwise would vitiate any meaningful distinction between symptoms which are legitimately moored to an 'accidental bodily injury, sickness, mental illness, pregnancy, or episode of substance abuse,' and those which are not.  It is simply not meaningful to talk about symptoms in the abstract: Seeking medical care for a symptom of a pre-existing condition can only serve as the basis for exclusion from receiving benefits in a situation where there is some intention on the part of the physician or of the patient to treat or uncover the underlying condition which is causing the symptom.

Such a holding does not mean that we require that a 'correct' diagnosis be made before the effective date of a policy in order for an insurance company to be able to deny coverage based on a pre-existing condition.  In <u>Lawson</u>, we explained the difference between a 'suspected condition without a confirmative diagnosis' and 'a misdiagnosis or an unsuspected condition manifesting non-specific symptoms.'

<u>Id.</u> at 628 (citing <u>Lawson</u>, 301 F.3d at 166).

The Third Circuit's opinion in <u>McLeod</u>, which relied upon a prior Third Circuit decision, <u>Lawson</u>, is factually distinguishable from this case.  First, this case does not concern a situation involving an "unsuspected condition manifesting non-specific symptoms."  <u>McLeod</u>, 372 F.3d at 628.  Moreover, in contrast with the <u>McLeod</u> case, this case does not concern a lack of treatment because neither Plaintiff nor her physicians knew or suspected that her symptoms were in any way connected with IBD.  Although Dr. Wright's medical notes from Plaintiff's

20

January 2, 2004 appointment indicate that Plaintiff most likely has IBS with hemorrhoids causing bleeding, this statement follows his initial comment that: "Donna has a problem. *Diarrhea + blood + weight loss = absolute indication for colonoscopy to rule out inflammatory bowel disease*." (Rec. Doc. 28, Ex. B) (emphasis added). Accordingly, as early as January 2, 2004, Dr. Wright recommended that Plaintiff have a colonoscopy to rule out an IBD. Second, as accurately pointed out by Defendants, Dr. Wright was attempting to uncover "the underlying condition" which was causing Plaintiff's symptoms of diarrhea and bleeding. To do so, and as noted, he recommended that she have a colonoscopy to rule out an IBD such as Crohn's Disease. Dr. Wright's usage of the phrase "rule out" does not mean that an IBD was not a suspected possible cause of Plaintiff's symptoms. Additionally, Dr. Wright's concern that Plaintiff may have an IBD is reflected in his medical notes following his consultation with Plaintiff on January 30, 2004, which occurred prior to Plaintiff's colonoscopy. His assessment was "Likely Crohn's disease." (Rec. Doc. 28, Ex. F).

Finally, contrary to Plaintiff's allegations, no misdiagnosis occurred in this case. Dr. Wright did not misdiagnose Plaintiff on January 2, 2004 because he strongly recommended that Plaintiff have a colonoscopy conducted to rule out an IBD as her symptoms provided an "absolute indication" for such diagnostic test. A

misdiagnosis cannot occur where a physician recommends that a patient have a diagnostic test performed to ascertain the root of her symptoms; however, the patient does not follow her physician's advice.

While we certainly have utmost empathy for Plaintiff's obvious plight which involves a lack of personal resources to have the colonoscopy at issue performed, such unfortunate circumstances cannot alter the clear meaning and plain language of the Plan's Pre-Existing Condition Exclusion.  Plaintiff is, in effect, asking the Court to apply equitable principles to overlook the Pre-Existing Condition Exclusion based upon her unique personal circumstances, which we simply lack the power to do.

After a careful review of the record and viewing the evidence in the light most favorable to the nonmoving party, Plaintiff cannot demonstrate that AmeriHealth acted in an arbitrary and capricious manner in denying her claim where she had been advised prior to the effective date of coverage to have a colonoscopy performed to determine if she was suffering from an IBD such as Crohn's disease, which was the eventual diagnosis of her medical condition.[4] Therefore, summary judgment shall be granted in favor of Defendants.

---

[4] As we have concluded that Defendants did not act in an arbitrary and capricious manner in denying Plaintiff's claim for benefits, we need not address Defendants' alternative argument that the Court should grant AmeriHealth summary judgment on the basis that it is not a proper party to Plaintiff's claim for past due benefits.  (Defs.' Br. Supp. Mot. Summ. J. at 13-14).

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      The Motion for Summary Judgment filed by Defendants AmeriHealth

Administrators and Ono Transport Services, Inc., Health and Medical

Benefits Plan (doc. 26) is GRANTED.

2.      Plaintiff's Motion for Summary Judgment (doc. 29) is DENIED.

3.      The Clerk shall close the file on this case.


<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge